## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**JERRY BEALE, JR.**                                                              **PETITIONER**

**v.**                                                                    **No. 3:24CV303-MPM-DAS**

**MARCUS MCCLURE, ET AL.**                                                   **RESPONDENTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Jerry Beale, Jr. for a writ of

*habeas corpus* under 28 U.S.C. § 2254.   The State has responded to the petition; the petitioner has not

replied, and the deadline to do so has expired.[1]   The matter is ripe for resolution.   For the reasons set

forth below, the instant petition for writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may

be detained, is ancient.   Duker, The English Origins of the Writ of Habeas Corpus:   A Peculiar

Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St.

John's L.Rev. 55 (1934).   It is "perhaps the most important writ known to the constitutional law

of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is

equally significant in the United States.   Article I, § 9, of the Constitution ensures that the right

of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or

---

[1]  The petitioner moved [16] July 22, 2025, to extend the deadline to file a reply, alleging that he was gathering documents (sworn statements) to support his petition – but could not secure them before the deadline to reply.   However, he did not identify the people giving the statements – or inform the court of the information the statements would provide.   In addition, he has yet to present the statements to the court, and nearly four months have passed since he filed the instant motion.   As such, the court will deny the instant motion [16].

invasion, public safety may require it.   *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56.

Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789.

*Habeas corpus* principles developed over time in both English and American common

law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the
> 1948 Judicial Code.   The recodification of that year set out important procedural
> limitations and additional procedural changes were added in 1966.   The scope of the
> writ, insofar as the statutory language is concerned, remained essentially the same,
> however, until 1996, when Congress enacted the Antiterrorism and Effective Death
> Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners
> and setting out special, new *habeas corpus* procedures for capital cases.   The changes
> made by the 1996 legislation are the end product of decades of debate about *habeas
> corpus*.

*Id*.   Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of

the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held

by a *state* in violation of the supreme law of the land.   *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct.

582, 588, 59 L. Ed. 969 (1915).

### Facts and Procedural Posture[2]

### Convictions and Sentences

Beale was indicted by a DeSoto County grand jury for three counts of attempted murder

of police officers Colin Hall, Mary Fite, and Branson Vuncannon.   Doc. 14-1 at 12 (SCR, Vol. 1

at 11).   Beale's first trial resulted in a hung jury, but on retrial, a jury convicted him of the

attempted murder of Officers Hall and Fite and found Beale not guilty of the attempted murder

of Officer Vuncannon.   Doc. 14-1 at 117–18 (SCR, Vol. 1 at 116–17; Doc. 14-2 at 64, 74–75

(SCR, Vol. 2 at 213, 223–24).

---

[2] The court has drawn the facts and procedural posture from the State's response to the
instant petition for writ of *habeas corpus*, as they are both well-documented and uncontested.

Both the Mississippi Court of Appeals and the Mississippi Supreme Court set forth the

facts from Beale's trial for attempted murder of police officers:[3]

¶2. In the late hours of the night on June 8, 2018, Piccola Thomas was awoken in her apartment by a fight that had broken out between her sister and her sister's boyfriend, Jerry Beale. Piccola told the couple to leave her apartment. Piccola's sister left, but Beale refused to leave. Piccola threatened to call the police, but Beale still would not leave her apartment. Instead, Beale responded and told her to go ahead and call the police because he was going to "light this b*tch up."

¶3. Piccola eventually called 911. She told the 911 operator that Beale was armed, was making threats, and had been drinking, and she wanted him to leave the apartment. The 911 operator subsequently sent this information to a police dispatcher, who proceeded to put a call out to the police. The first police officer to arrive on the scene was Colin Hall, and Officers Mary Fite and Brantson Vuncannon arrived shortly afterward.

¶4. Officer Hall testified that based on what he learned from police dispatch, he was called to the scene because a male inside the apartment was "belligerent" and "making threats." Piccola told Officer Hall that Beale had been drinking all night and appeared to be "heavily intoxicated," was armed, and had said that if the police were called that he was going to kill them.

¶5. Once inside the apartment, Officer Hall testified that they heard Beale repeatedly screaming, "I don't talk to no f'ing police." Officer Hall stated that two or three times they announced their presence inside the apartment, making it known that the police were coming inside. The three officers started going up the stairs and saw Beale at the top. Beale was shirtless, drinking a beer, and pacing back and forth with a pistol jammed in his waistband. After the officers saw the pistol, they drew their service weapons. According to Officer Hall, Beale was completely ignoring the officers and their commands.

¶6. Officer Hall testified that he began to give Beale commands to put his hands on his head; Beale refused. The three officers holstered their guns and readied their tasers, still attempting to get Beale to comply. In an attempt to regain control of the situation, Officer Hall fired his taser at Beale. Officer Fite also aimed and fired her taser at Beale. Officer Hall's taser hit Beale but did not incapacitate him. In response, Beale immediately drew his gun and fired it at the officers.

---

[3] On certiorari review, the Mississippi Supreme Court noted that the court had taken "[t]he facts and procedural history … verbatim from the Court of Appeals opinion." *Beale v. State*, 367 So.3d 159, 160 n.1 (Miss. 2023).

¶7. Officer Hall recounted how he saw the gun pointed directly at him and only remembered hearing the "bang, bang, bang" as Beale fired. Officer Fite would later testify she saw Beale's pistol pointed at her face as well.

¶8. When Beale shot at the officers, all three of them immediately retreated. While Officer Hall took cover in a bedroom, he called police dispatch and reported the shooting and requested backup. He also requested an ambulance because he had seen blood on the floor and was concerned that he had been shot. Meanwhile, Officers Fite and Vuncannon retreated downstairs. Beale shut himself inside the bathroom.

¶9. When backup arrived, authorities continued to give Beale commands to come out of the bathroom and surrender. Beale ignored them at first but eventually opened the bathroom door and threw his loaded pistol down the stairs. Still belligerent, Beale refused to follow with orders to get on his knees and put his hands on his head. In the end, after being tased a second time, eight officers were eventually able to get Beale into custody.

¶10. Beale was indicted for three counts of attempted murder of three police officers. During trial, a crime scene technician explained he recovered three .40-caliber shell casings in the upstairs apartment area. An officer also recovered Beale's .40-caliber gun from where he had thrown it down the stairs. Bryan Rosenberg described for the jury the bullet holes that could be seen in photographs that depicted Beale had fired shots at the officers. All three officers testified that they believed Beale was shooting at them in order to kill them.

*Beale v. State*, 367 So. 3d 159, 162 (Miss.), *cert. denied*, 144 S. Ct. 245 (2023).

A jury found Beale guilty of two counts of attempted murder in Counts 1 and 2, and not guilty of one count of attempted murder in Count 3. **Exhibit A**[4]; Doc. 14-2 at 64, 74–75 (SCR, Vol. 2 at 213, 223–24); Doc. 14-5 at 146 (SCR, Vol. 5 at 445). The DeSoto County Circuit Court sentenced Beale on his two attempted murder convictions to serve concurrent thirty-five-year sentences in the custody of the Mississippi Department of Corrections, followed by five years of post-release supervision. **Exhibit B**; Doc. 14-2 at 99–102 (SCR, Vol. 2 at 248–51); Doc. 14-6 at 38 (SCR, Vol. 6 at 487).

---

[4] The exhibits referenced in this memorandum opinion may be found attached to the State's response to the instant petition.

**Direct Appeal**

Beale, through counsel, appealed his convictions and sentences.   In his appellant's brief before the Mississippi Court of Appeals, he raised three claims:

1. The indictment is defective for failure to allege what act Beale committed in furtherance of his attempt to kill the officers.

2. The jury instructions constructively amended the indictment, requiring the jury find that Beale shot at the officers in his attempt to kill, an element not contained in the indictment.

3. The trial court erred when it allowed the State to introduce hearsay testimony through officer Colin Hall, which went to prove Beale's intent to kill the officers.

Doc. 14-8 at 1–20 (SCR, Briefs, Brief of Appellant).   The Mississippi Court of Appeals rejected Beale's arguments and affirmed his convictions and sentences.   **Exhibit C** (*Beale v. State*, 361 So.3d 673 (Miss. Ct. App. 2022)).

In his motion for rehearing, Beale renewed only two of his original three claims:   his challenges to his alleged defective indictment and the constructive amendment of the indictment via jury instructions.   Doc. 14-8 at 80–86 (SCR, Briefs, Motion for Rehearing).   The Mississippi Court of Appeals denied rehearing.   Doc. 14-9 at 11 (SCR, Decision Letter dated August 9, 2022).

In his petition for writ of certiorari to the Mississippi Supreme Court, Beale again only renewed two of his original three claims:   defective indictment and constructive amendment of the indictment.   Doc. 14-10 at 39–45 (SCR, Certiorari Folder, Petition for Writ of Certiorari). The Mississippi Supreme Court granted certiorari review "because one of the issues raised by Beale had never been addressed by th[e] [c]ourt" and affirmed Beale's convictions and sentences.   **Exhibit D** (*Beale v. State*, 367 So. 3d 159 (Miss. 2023)); Doc. 14-10 at 3–18, 36 (SCR, Certiorari Folder).

The Mississippi Supreme Court confirmed that Beale raised three issues before the court of appeals but only two issues in his certiorari petition. *Beale*, 367 So. 3d at 161–62. The Mississippi Supreme Court first determined that "Beale's indictment for attempted murder did not require the description of an overt act and was sufficient." *Id.* at 162–63. The Mississippi Supreme Court also "agree[d]" with the court of appeals' determination that Beale's jury instruction argument was procedurally barred and, alternatively, was meritless. *Id.* at 163–64.

Finally, Beale filed a *pro se* certiorari petition in the Supreme Court and raised all three of his original direct appeal claims. Doc. 14-11 (Supreme Court Docket and Filings). The Supreme Court denied Beale's certiorari petition on October 2, 2023. **Exhibit E** (*Beale v. Mississippi*, 144 S. Ct. 245 (2023)); Doc. 14-11 (Supreme Court Docket and Filings).

### First Federal *Habeas Corpus* Proceeding

Beale filed his first, unsigned federal petition for writ of *habeas corpus* in the Southern District of Mississippi on December 4, 2023. *Beale v. Huffman*, No. 1:23-CV-349-HSO-RPM, Doc. 1 (S.D. Miss. Dec. 4, 2023). The court immediately ordered Beale to pay the requisite filing fee or file a proper motion to proceed *in forma pauperis*. *Beale v. Huffman*, No. 1:23-CV-349-HSO-RPM, Doc. 3 (S.D. Miss. Dec. 5, 2023). After Beale failed to comply, the court issued three show cause orders in January 2024, February 2024, and March 2024; and Beale finally complied in April 2024. *Beale v. Huffman*, No. 1:23-CV-349-HSO-RPM, Docs. 4, 6, 7, 8, 9 (S.D. Miss. Apr. 17, 2024). The court then transferred Beale's petition to this court. *Beale v. Huffman*, No. 1:23-CV-349-HSO-RPM, Doc. 10 (S.D. Miss. Apr. 22, 2024).

This court immediately ordered Beale to file an amended petition verified with his signature. *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 13 (N.D. Miss. Apr. 23, 2024). When Beale failed to comply, this court entered an Order to Show Cause. *Beale v. Huffman*,

No. 3:24-CV-109-SA-JMV, Doc. 13 (N.D. Miss. May 15, 2024).   Beale then filed his amended

petition, raising the following grounds for relief:

| | |
|---|---|
| **Ground One**: | The indictment in this case is defective for failing to allege all the essential elements of attempted murder. Specifically, the indictment does not include the act which would constitute murder if completed. |
| **Ground Two**: | The jury instructions constructively amended the indictment because the indictment is missing the element set out in the instructions. |
| **Ground Three**: | The trial court erred when it allowed the State to introduce hearsay testimony through Officer Colin Hall. |
| **Ground Four**: | Ineffective assistance of counsel for failing to argue that no samples were taken of the "blood on the floor." |

*Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 16 (N.D. Miss. May 15, 2024).   Beale

conceded that he had not exhausted all his grounds for relief.   *Beale v. Huffman*, No. 3:24-CV-

109-SA-JMV, Doc. 16 (N.D. Miss. May 15, 2024).

On June 25, 2024, the State moved to dismissed Beale's "mixed" petition as unexhausted.

*Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 23 (N.D. Miss. June 25, 2024).   The State

argued that Beale exhausted grounds one and two in the Mississippi Supreme Court but failed to

exhaust grounds three and four.   *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 23 (N.D.

Miss. June 25, 2024).   The State further opposed a stay of Beale's federal *habeas corpus*

proceedings, explaining that Beale's one-year federal *habeas corpus* limitations period had not

yet expired, and that he could, with diligence, exhaust his claims in state court, then return to

federal court with a timely federal petition for writ of *habeas corpus* containing fully exhausted

claims.   *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 23 (N.D. Miss. June 25, 2024)

(citing *Duncan v. Walker*, 533 U.S. 167 (2001); 28 U.S.C. § 2244(d)(2) (the one-year federal

*habeas corpus* statute of limitations is tolled during the pendency of a "properly filed"

application for state post-conviction review)).

Beale then filed a motion to stay his federal *habeas corpus* proceedings on July 9, 2024. *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 24 (N.D. Miss. July 9, 2024). The State in that case again opposed a stay and reiterated that Beale's one-year federal *habeas corpus* limitations period had not yet expired, that he had not yet sought state post-conviction relief, and that he had ample time, with diligence, to do so and return to this court having fully exhausted his claims. *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 25 (N.D. Miss. July 15, 2024).

On July 22, 2024, the court entered a Memorandum Opinion and Order dismissing Beale's "mixed" petition without prejudice for failure to exhaust state court remedies. **Exhibit F**; *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 27 (N.D. Miss. July 22, 2024) ( "the Mississippi Supreme Court, the state's highest court, ha[d] not yet had an opportunity to address Grounds III (whether the trial court erred when it allowed the state to introduce hearsay testimony through Officer Hall) and IV (ineffective assistance of counsel)"). The court also denied Beale's request for a stay of his federal *habeas corpus* proceedings because he "advance[d] no substantive argument in support of his request" and thus failed to show "good cause" or merit to his claims, as required for a stay. *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 27 at 5 (N.D. Miss. July 22, 2024).

The court determined that Beale's federal petition was, at that time, "due on or before October 2, 2024[,]" but that "the filing of a state post-conviction application[] will toll the federal statute of limitations as long as the pleading is pending in state court." *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 27 at 5 (N.D. Miss. July 22, 2024). "As such," the court concluded that "Beale, acting with diligence, ha[d] sufficient time to file a state post-conviction application and, if necessary, return to federal court and file a timely *habeas* petition."

*Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 27 at 6 (N.D. Miss. July 22, 2024). "To be clear," the court reiterated that "so long as Beale properly files a state post-conviction application *on or before* October 2, 2024, that filing will toll the federal limitations deadline." *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 27 at 6 (N.D. Miss. July 22, 2024). The court concluded that "a stay and abeyance is unnecessary to protect Beale's ability to timely file a federal *habeas* petition after his State remedies are exhausted." *Beale v. Huffman*, No. 3:24-CV-109-SA-JMV, Doc. 27 at 6 (N.D. Miss. July 22, 2024).

**State Post-Conviction Proceedings**

On August 6, 2024, Beale submitted a state post-conviction relief (PCR) motion, asserting the following claims for relief:

1. The accusatory instrument in []his case is defective for failure to allege what act Beale committed in furtherance of his attempt to kill the officers.

2. The jury instructions constructively amended the indictment [because they] included that Beale "shot at" the officers in his attempt to kill them. A[n] element is not contained in the indictment.

3. The trial court erred when it allowed the State to introduce hearsay testimony through Officer Colin Hall which went to prove Beale's intent to kill the officers.

4. Ineffective assistance of counsel [because] there is DNA evidence made aware to Jessica Massy Carr, that to the day is untested.

Doc. 14-12 (SCR, Cause No. 2024-M-912).

On August 20, 2024, the Mississippi Supreme Court "denied Beale's PCR motion.

**Exhibit G**. The court determined that claims "(1)–(3) [we]re barred by *res judicata*" and that "(4) … [wa]s waive[d], lack[ed] an arguable basis, and/or fail[ed] to make the requisite showing of deficient performance and prejudice provided in *Strickland v. Washington*, 466 U.S. 668 [] (1984)." **Exhibit G**.

**Current Federal *Habeas Corpus* Proceeding**

Beale filed his current federal petition for writ of *habeas corpus* in this court on September 24, 2024.   Doc. 1.   Beale repeats the claims from his first federal *habeas corpus* petition and his state PCR motion:

| | |
|---|---|
| **Ground One**: | The indictment in this case is defective for failing to allege all the essential elements of attempted murder. Specifically, the indictment does not include the act which would constitute murder if completed. |
| **Ground Two**: | The jury instructions constructively amended the indictment because the indictment is missing the element set out in the instructions. |
| **Ground Three**: | The trial court erred when it allowed the State to introduce hearsay testimony through Officer Colin Hall. |
| **Ground Four**: | Ineffective assistance of counsel for failing to argue that no samples were taken of the "blood on the floor." |

Doc. 1.   As discussed below, Beale is not entitled to federal *habeas corpus* relief on his claims.

**Beale's Challenge to Jury Instructions 8 and 9
in Ground Two Is Procedurally Barred**

Federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision."   *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012).   Thus, a federal court may not consider a *habeas corpus* claim when, " (1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds."   *Maples v. Thomas*, 565 U.S. 266, 280 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted).   This doctrine is known as *procedural bar*.

A state procedural rule is "independent" when the state law ground for decision is not

- 10 -

"interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* State court decision must not be interwoven with federal law, Federal Habeas Manual § 9B:24.

To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

A petitioner may overcome the procedural bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his failure and prejudice from application of the bar, he may still overcome the bar by showing that its application would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th

Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5ᵗʰ Cir. 1995)).   Further, he must support his

allegations with new, reliable evidence – that was not presented at trial – and must show that, "more

likely than not that no reasonable juror would have convicted him in light of the new evidence."

*Fairman,* 188 F.3d at 644 (citations omitted).

### Ground Two Is Procedural Barred

Beale raised his jury instruction challenge in Ground Two through counsel on direct

appeal.   Doc. 14-8 (SCR, Briefs).   The Mississippi Court of Appeals held that "Beale failed to

object to instructions 8 and 9 at trial."   *Beale*, 361 So. 3d at 680.   The state court's precedent

makes clear "'that when a defendant fails to object to a jury instruction at trial, the defendant is

procedurally barred from challenging the instruction on appeal.'"   *Id.* at 680–81 (quoting

*McGilvary v. State*, 290 So. 3d 1273, 1280 (¶24) (Miss. Ct. App. 2020)).   As such, the

Mississippi Court of Appeals held that "Beale's issue is procedurally barred."   *Beale*, 361 So. 3d

at 681.

Beale then raised his jury instructions challenge to the Mississippi Supreme Court on

certiorari review.   Doc. 14-10 at 39–45 (SCR, Certiorari Folder, Petition for Writ of Certiorari).

The Mississippi Supreme Court first noted that "[t]he Court of Appeals found that because Beale

had failed to object to instructions 8 and 9 at trial, he was procedurally barred from challenging

the instructions on appeal."   *Beale*, 367 So. 3d at 163 (citing *Beale*, 361 So. 3d at 680–81).   The

Mississippi Supreme Court likewise observed that "[t]he Court of Appeals also determined that

the instructions did not constitute a constructive amendment."   *Id.*   The Mississippi Supreme

Court "agree[d] with the Court of Appeals," holding that "Beale failed to object to the jury

instruction[,]" and "an offended party's failure to object to jury instructions at trial procedurally

bars that issue on appeal."   *Id.* (citations omitted).   In addition, when Beale again raised his jury

instructions challenge on state post-conviction review, the Mississippi Supreme Court held that it was "barred by *res judicata*[.]" **Exhibit G**.

Ultimately, the Mississippi Supreme Court held that *Beale failed to raise his objections to jury instructions 8 and 9 at trial*; as such, his claim in Ground Two is procedurally barred from federal *habeas corpus* review. *Id.*

### Contemporaneous Objection or Waiver Rule

On post-conviction collateral review, the Mississippi Supreme Court found that Beale's allegations in Ground Two were procedurally barred under Mississippi's contemporaneous objection or waiver rule.

### Independent State Procedural Bar

The Fifth Circuit has long held that the contemporaneous objection rule is an independent state procedural bar, as it is not "interwoven with the federal law." *See Smith v. Black*, 970 F.2d 1383, 1386 (5th Cir. 1992) (contemporaneous objection rule is an independent state procedural bar); *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983) (state court decision must not be interwoven with federal law). The rule is not interwoven with federal law because the state has not made applying the procedural bar "depend[ent] on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* State court decision must not be interwoven with federal law, Federal Habeas Manual § 9B:24.

### Adequate State Procedural Bar

The adequacy of the procedural bar applied to these claims in state court depends on whether the State of Mississippi has strictly or regularly applied it. *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir.

1996). Beale has not shown "inconsistent and irregular" application of the bar – and is thus precluded from presenting his state claims in federal court under an independent and adequate state procedural rule. *Id.* at 861. Further, the Fifth Circuit has previously found that Mississippi's contemporaneous objection rule *is* an adequate state bar, as it has been consistently and regularly applied. *Wiley v. Puckett*, 969 F.2d 86, 103 (5th Cir. 1992), *as amended* (Aug. 5, 1992); *Williams v. Puckett*, 283 F.3d 272, 281 (5th Cir. 2002); *see also Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999).

### Cause and Prejudice Test

The petitioner has not shown that any external impediment prevented him from bringing these claims in state court; in addition, he has not shown that actual prejudice would result from applying the bar. Further, as the has not exhausted any claim that counsel was ineffective, he may not rely upon ineffective assistance of counsel to establish cause for his failure to raise these issues in a timely fashion. In failing to establish both cause for his default and prejudice from applying the procedural bar, he has not overcome it, and the court cannot review Ground Two of the instant petition.

### Fundamental Miscarriage of Justice Test

Neither will this court's decision to forego considering the petitioner's claims in Ground Two result in a "fundamental miscarriage of justice," as he has not shown, by clear and convincing evidence not available at trial, that "he did not commit the crime of conviction."[5] *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)).

---

[5] The court does not construe Beale's claim that his indictment was defective (insufficient to charge the crime of attempted murder) as a claim of actual innocence. Indeed, there is no legitimate dispute that he fired a handgun at the officers. However, even if the court were to construe the claim in that way, Beale has not provided new, clear and convincing evidence, unavailable at trial, that he did not commit the crime of his conviction. *See Fairman, supra*.

- 14 -

Indeed, he has not presented the court with any such evidence.   For these reasons, his claims in Ground Two of the instant petition must be dismissed as procedurally barred.

### Ground Two Is, Alternatively, Meritless

Separate and apart from procedural bar, the state court denied as meritless Beale's challenge to jury instructions found in Ground Two of the instant petition.   *See Beale*, 367 So. 3d at 164 ( "that the jury instructions did not materially alter the face of the indictment in a way that would prejudice Beale's case," and thus, the issue is meritless).   In addition, when a claim is "barred by independent and adequate state law grounds," "the state court's review of the merits does not vitiate the procedural bar," including a plain error review.   *Hughes v. Dretke*, 412 F.3d 582, 592–93 (5th Cir. 2005) (alternate dismissal on the merits by the state court did not preclude imposition of bar on federal *habeas corpus* review for petitioner's failure to contemporaneously object on federal constitutional grounds in state court); *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005) (state court's alternative holding that constitutional claim lacked merit did not preclude imposing a procedural bar for the petitioner's failure to contemporaneously object to preserve claim for review).

### Grounds One, Three, and Four:   Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds One, Three, and Four on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added).   The first exception, subsection (d)(1), applies to questions of law.   *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000).   The second exception, subsection (d)(2), applies to questions of fact.   *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997).   Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law."   *Id.* (emphasis added).   A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts."   *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000).   A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable.   *Id.* at 1521.   As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law.   Accordingly, the exception in subsection (d)(1) does not apply to Grounds One, Three, and Four of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the state supreme court is presumed to have determined the facts reasonably, it is the

petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One:   Sufficiency of the Indictment

In Ground One, Beale argues that his Indictment is defective because it does not describe a specific "overt act" designed to kill the officers.   Beale argues that a description of such an overt act is a necessary element of the crime of attempt, and the absence of that description is fatal to the Indictment.   The Mississippi Supreme Court rejected Beale's indictment challenge as meritless. **Exhibit D**.   When Beale renewed the challenge to his indictment on state post-conviction review, the Mississippi Supreme Court denied the claim as "barred by *res judicata*."   **Exhibit G**; Doc. 14-12 (SCR, 2024-M-912).

Beale's indictment reads, in relevant part:

> ### COUNT 1
> That **JERRY LEE BEALE**, Late of the County and State aforesaid, on or about the 7th day of June, in the year of our Lord, 2018, in the County and State aforesaid, and within the jurisdiction of this Court, did wilfully, unlawfully and feloniously, attempt to kill Officer Colin Hall, a human being; **JERRY LEE BEALE** acted with the deliberate design to effect the death of Officer Colin Hall, but failed to successfully complete the act, in direct violation of Section 97-3-19(1)(a), Mississippi Code 1972 Annotated, as amended, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
> (Life if fixed by a jury, nlt 20 years by court)

Doc. 14-1, p. 12.[6]

To the extent that Beale challenges the validity of his indictment under state law, the state supreme court is the final arbiter of state law issues, and a federal court on *habeas corpus* review

---

[6] The other two counts are identical but for the names of the intended victims.

may not consider them. *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994). Hence, Beale's renewed claim under state law is simply not cognizable on *habeas corpus* review.

The Mississippi Supreme Court considered Beale's challenge to the sufficiency of his indictment – and rejected it as meritless. **Exhibit D**. That ruling precludes federal *habeas corpus* review on this issue. In the Fifth Circuit, "the sufficiency of a state indictment is not a matter for federal *habeas corpus* relief *unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction*." *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009) (emphasis added)(citation omitted).

Further, the issue "whether a state indictment is sufficient to confer a court with jurisdiction" is a matter of state law. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). In this case, the highest court of Mississippi has held (explicitly or implicitly) that the indictment was sufficient under state law; as such, this court is precluded from conducting federal *habeas corpus* review. *Coleman v. Taylor*, 49 F.3d 728 (5th Cir. 1995). Indeed, even if federal *habeas corpus* review were not precluded, the court must give "deference to the state court's interpretations of its own law" – and, in this case, its implicit determination that the indictment was sufficient under Mississippi law. *McKay*, 12 F.3d at 69; *accord Pace v. Arrington*, No. 3:20CV287-DPJ-LGI, 2023 WL 6156869, at *6 (S.D. Miss. July 31, 2023), *report and recommendation adopted*, 2023 WL 6150243 (S.D. Miss. Sept. 20, 2023).

On direct appeal, Beale challenged whether his indictment correctly stated the elements of attempted murder – because it did not include the (allegedly essential) element of how Beale attempted to kill the officers. In his petition for writ of certiorari, he again argued that his indictment was defective because it lacked the element of an overt act, which he described as essential element of attempted murder. The Mississippi Supreme Court granted Beale's petition

for writ of certiorari, considered the claim, and rejected it.    The Mississippi Supreme Court thus

held that Beale's indictment correctly stated the necessary elements of attempted murder under

state law.

The Mississippi Supreme Court discussed the issue in detail:

¶4. In 2013, the Legislature amended the attempt statute by adding the language found in subsection (2), which only addresses attempted murder.   *See* Miss. Code Ann. § 97-1-7 (Rev. 2020).[7]   The Legislature specifically set apart attempted murder from all other attempt crimes by removing the overt act requirement as to attempted murder.   Prior to the 2013 amendment, the statute read, "[e]very person who shall design and endeavor to commit an offense, and shall do any ***overt act*** toward the commission thereof, but shall fail therein, or shall be prevented from committing the same ...."   Miss. Code Ann. § 97-1-7 (Rev. 2006). In subsection (2), which was added by the 2013 amendment, the Legislature definitively wrote that only "an act" be committed in furtherance of the murder. Miss. Code Ann. § 97-1-7 (Rev. 2020).   Beale unconvincingly argues that the amended statute should be interpreted no differently than its predecessor.   He claims his indictment was defective because it did not specify an overt act toward the commission of attempted murder.

*Beale*, 367 So. 3d at 162 (emphasis added).

---

[7] The Mississippi Supreme Court quoted Mississippi's entire amended attempt statute:

(1) Every person who shall design and endeavor to *commit an **offense**, and shall do any **overt act** toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof*, shall, where no other specific provision is made by law for the punishment of the attempt, be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted.

(2) Every person who shall design and endeavor to *commit an act which, if accomplished, would constitute **an offense of murder** under Section 97-3-19*, but shall fail therein, or shall be prevented from committing the same, shall be guilty of attempted murder and, upon conviction, shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict after a separate sentencing proceeding. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than twenty (20) years in the custody of the Department of Corrections.

*Beale*, 367 So. 3d at 162 (quoting Miss. Code Ann. § 97-1-7 (Rev. 2020) (emphasis added by this court and the Mississippi Supreme Court)).

The Mississippi Supreme Court further noted that, "[a]s Judge McCarty correctly held in the Court of Appeals majority opinion, prior to 2013, all attempt crimes were treated the same under the general statute, and that general statute required proof of an 'overt act.'" *Id.* (citing Miss. Code Ann. § 97-1-7 (Rev. 2006)). The Mississippi Supreme Court decided that

> [a] plain reading of the amended statute, however, leaves no question that the Legislature chose to treat the crime of attempted murder differently from all other attempt crimes, by removing from the text the 'overt act' language in Section 97-1-7(2), which singularly addresses attempted murder.

*Beale*, 367 So. 3d at 162.

The Mississippi Supreme Court applied the "'fundamental rule of statutory construction'"—"'the plain meaning rule'"— and concluded that "[t]he Legislature's amended statute plainly reads that an overt act is not necessary to prove attempted murder." *Beale*, 367 So. 3d at 162–63. The Mississippi Supreme Court ultimately explained:

> Beale was indicted for three counts of attempted murder. His indictment tracked the language of Section 97-1-7(2), stating that Beale "did willfully, unlawfully, and feloniously, attempt to kill Officer [name], a human being ... [and] acted with the deliberate design to effect the death of Officer [name], but failed to successfully complete the act, in direct violation of Section 97-3-19(1)(a) ...." Because the Legislature did not include a requirement to set forth a direct, overt act in an indictment under the attempted murder statute, we hold that Beale's indictment for attempted murder did not require the description of an overt act and was sufficient. Thus, we find that there is no defect in Beale's indictment, and his convictions and sentences are affirmed.

*Beale*, 367 So. 3d at 163.

Under this ruling, the Legislature actually singled out attempted murder and *removed* the language regarding an "overt act;" hence, according to the Mississippi Supreme Court, the legislative intent is clear, and the State need not specify an overt act in the Indictment.[8] For

---

[8] A close reading of the original and amended statutes *could* lead to the opposite conclusion. The court can discern no *practical* difference between the language of the original statute and that of the amended one. Hence, it appears that the Indictments under each statute

- 20 -

these reasons, Beale's indictment correctly stated the necessary elements of attempted murder under Mississippi law . *Id.*

The state appellate courts rejected Beale's challenge to his indictment under Mississippi law.  Beale has not shown that his indictment was "so defective that the convicting court had no jurisdiction."  *Evans*, 577 F.3d at 624.  As such, this state law issue is precluded from federal *habeas corpus* review.  In addition, the decisions rejecting this claim are not contrary to, nor an unreasonable application of, clearly established federal law, nor are they based on an unreasonable determination of facts in light of the evidence presented.  Hence, Beale is not

---

*should* have the same require elements – including a description of the "act" or "overt act" giving rise to the attempted murder charge.

The amended statute states that, to complete the offense of attempted murder, the offender must "endeavor to *commit an act* which, if accomplished, would constitute an offense of murder under Section 97-3-19."  Miss. Code Ann. § 97-1-7 (Rev. 2020) (emphasis added). It would make sense to require that the "act" mentioned in the amended statute be described in the Indictment – to put the defendant on notice of the act or acts giving rise to the charged crime (attempted murder).  After all, under the previous statute, the State was required to describe the "overt act" giving rise to the charge of attempted murder.  As shown below, in this context, there appears to be little, if any, difference between an "act" (required in the amended statute) and an "overt act" (required in the original statute).

An ***act*** "[d]enotes external manifestation of actor's will … something done voluntarily by a person."  ACT, Black's Law Dictionary (5th ed. 1979).  An *overt act* is "[a]n open, manifest act from which criminality may be implied."  OVERT ACT, Black's Law Dictionary (5th ed. 1979).  Combining the definitions, an ***overt act*** is *an open, external manifestation of an actor's will from which criminality may be implied*.

As the underlying crime is murder, "criminality may be implied" from the act constituting the attempt to commit murder.  Relying on the definitions above, found in Black's Dictionary, an ***act***, the "external manifestation of [an] actor's will" to commit murder (under the amended statute) seems to be merely a specific example of an ***overt act*** – "[a]n open, manifest act from which criminality [attempted murder] may be implied" (under the original statute). Black's Law Dictionary (5th ed. 1979).  Thus, to properly notify the defendant of the charge, it appears that the charging instrument in each case should describe the behavior giving rise to the crime, whether that behavior is described as an "act" or an "overt act."

Regardless, this court is bound by the state court's interpretation of its own law – and will leave the state court's decision undisturbed.

entitled to federal *habeas corpus* relief on his renewed challenge to his indictment in Ground One.

### Ground Three:   Introduction of "Hearsay" Evidence

In Ground Three, Beale argues that the trial court erred by allowing the State to introduce "hearsay" testimony through Officer Colin Hall.   Doc. 1.   Under Miss. R. Ev. 801, hearsay is "a statement that … the declarant does not make while testifying at the current trial or hearing … and … a party offers in evidence to prove the truth of the matter asserted in the statement." Miss. R. Ev. 801(c)(1) and (2).   Beale argues that the State used hearsay testimony to prove that he intended to kill police if they responded to Piccola's 911 call.   Doc. 1.

On direct appeal, the Mississippi Court of Appeals rejected Beale's hearsay challenge as meritless, holding that Officer Hall's testimony did not meet the definition of hearsay because it was not offered to prove the truth of the matter asserted.   **Exhibit C**.   When Beale renewed his argument on state post-conviction review the Mississippi Supreme Court denied it as "barred by *res judicata*[.]"   **Exhibit G**; Doc. 14-12 (SCR, 2024-M-912).

The trial court allowed Officer Hall to repeat the statement that Piccola provided when he arrived at the crime scene.   Beale has not shown that the admission of the challenged testimony was hearsay; indeed, Piccola's testimony was not admitted for its truth, but to reveal the reason Officer Hall took the subsequent actions during his investigation.   *Beale*, 361 So. 3d at 682.   As such, the trial court did not err by admitting it.   On direct appeal, the state appellate court held that the officer's statement was not hearsay evidence.   *Id*.

"However, assuming *arguendo* that it could constitute such evidence, the Court [has] note[d] that the Fifth Circuit has held that the 'mere erroneous admission of prejudicial testimony does not, in itself, justify federal *habeas* relief unless it is material in the sense of a crucial,

critical, highly significant factor, in the context of the entire trial.'"   *Totten v. Shaw*, No. 3:17-CV-205-SA-DAS, 2018 WL 3785457, at *7 (N.D. Miss. Aug. 9, 2018) (citing *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985)).

The record reflects that Officer Hall was the first to respond to Piccola's 911 call.   Doc. 14-4 at 42 (SCR, Vol. 4 at 191).   Without objection, Officer Hall responded to the State's question about what he "learned" from police dispatch.   Doc. 14-4 at 42 (SCR, Vol. 4 at 191).   Officer Hall testified that dispatch informed him that a man inside the apartment was "being belligerent, making threats to people inside the residence."   Doc. 14-4 at 42 (SCR, Vol. 4 at 191).   He explained that the dispatcher was not "really sure exactly what threats were being made, but the person who lived in the apartment wanted [the man] removed because of the disturbance he was creating."   Doc. 14-4 at 42 (SCR, Vol. 4 at 191).

Officer Hall explained that, when he arrived at the apartment, he spoke with Piccola to gather as much information as possible before entering the apartment.   Doc. 14-4 at 43 (SCR, Vol. 4 at 192).   The State then asked Officer Hall what he learned when he began gathering information from her.   Doc. 14-4 at 43 (SCR, Vol. 4 at 192).   Beale interposed a hearsay objection, arguing that the State was trying to show that Beale had threatened the officers.   Doc. 14-4 at 44–45 (SCR, Vol. 4 at 193–94).   The State countered that it had not solicited a hearsay statement; instead, Officer Hall's testimony would explain the course of his investigation.   Doc. 14-4 at 44–45 (SCR, Vol. 4 at 193–94).   The trial court agreed that the statements were admissible to explain the officers' next actions.   Doc. 14-4 at 45 (SCR, Vol. 4 at 194).   Then Officer Hall told the jury what he Piccola told him:

> We learned that there was a male inside the apartment who she identified to us as Mr. Jerry Beale.   He was creating a disturbance inside, making threats to people inside the apartment.   She stated that he had been drinking all night and appeared

to be heavily intoxicated at this point and said that if the police were called, that
he was going to kill them.

Doc. 14-4 at 45 (SCR, Vol. 4 at 194).   Indeed, the officers needed a description of the potential

danger – a heavily intoxicated man inside the house threatening to kill any police officers who

entered.   Whether the information was true or not, the officers could use it to devise and execute

a prudent plan to handle the situation.

On direct appeal, the Mississippi Court of Appeals observed:

"Our supreme court has granted an exception for certain hearsay statements made
to the police during the course of their investigation, holding that such statements
are permissible."   *Anderson v. State*, 1 So. 3d 905, 914 (¶25) (Miss. Ct. App.
2008).   "It is elemental that a police officer may show that he has received a
complaint, and what he did about the complaint without going into the details of
it."   *Id*.   "However, where the out-of-court statement is 'testimonial' in nature,
the statement is generally not admissible unless the declarant is unavailable to
testify in court, and the defendant has had a prior opportunity to cross-examine
him or her."   *Id*. at 914–15 (¶25) (citing *Crawford v. Washington*, 541 U.S. 36,
59 (2004)).

*Beale*, 361 So. 3d at 682.   Here, "Officer Hall's statements were not admitted to prove the truth

of the matter asserted; rather his statements were admitted to explain the next steps in the course

of his investigation."   *Id.*   It is a close call; however, "even if Officer Hall's recitation of

Piccola's statement to him was considered to be testimonial, any error by the trial court in

admitting the statements would be harmless because [Beale] had the opportunity to cross-

examine [Piccola]."   *Id*. at 682–83.

In addition, the information was presented to the jury through another source:

[T]he record in this case shows that Piccola's statements regarding Beale's threats
toward police officers were also introduced at trial through the testimony of the
911 dispatcher.

*Id.* at 683.   Further, "[a] recording of the 911 call was also played for the jury."   *Id.*   Thus,

given Beale's opportunity for cross-examination and the presentation of the same information

from other sources, the state appellate court held that it was "within the trial court's discretion to

- 24 -

allow the officer to testify in this circumstance" as to what he was told in the course of his investigation. *Id.*[9]

The trial court did not err by allowing Officer Hall to testify about what he learned when he arrived on scene and spoke to Piccola. Piccola's out-of-court statement explained why the officers entered the apartment – and why they chose their strategy in interacting with Beale. Officer Hall's testimony merely described a brief interview, which informed the officers' next steps, and, in any event, the information was introduced through other witnesses and evidence. Hence, the admission of the challenged testimony was not crucial, critical, or highly significant to the jury's determination; nor did it render Beale's trial fundamentally unfair. The state appellate courts properly denied Beale's challenge to the trial court's admission of "hearsay" testimony in Ground Three. As such, Beale is not entitled to federal *habeas corpus* relief as to Ground Three.

### Ground Four: Ineffective Assistance of Counsel Regarding Lack of Forensic Testing of Blood Found on the Floor

In Ground Four, Beale argues that his trial counsel was ineffective for failing to argue that no samples were taken of the "blood on the floor." Doc. 1 at 12. Beale argues that his trial counsel "was made aware of the 911 call introduced in [his] 2nd trial, and in that call Piccola Thomas says 'how did blood get on the floor, where did this blood come from[,]' before officers arrived." Doc. 1 at 12. Beale alleges that "CSI took pictures of the officer[']s taser next to [Beale's] blood and said it was 'Officer Vuncannon's blood next to a taser,'" but "no DNA test[s] were ever done." Doc. 1 at 12. Beale alleges that he "told [counsel] it was [his] blood on the floor," and "she said 'we don't want to bring that up.'" Doc. 1 at 12.

---

[9] The state appellate court further noted that the challenged testimony could have been admitted on another basis – excited utterance. *Beale*, 361 So. 3d at 683 n.4.

### Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

#### Beale's Claim Regarding the Lack of Forensic Analysis as to the "Blood on the Floor"

First, Beale's claim that counsel provided constitutionally ineffective legal assistance performance regarding lack of forensic blood analysis is without substantive merit. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the

outcome of the trial." *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000) (citation omitted); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279–80 (5th Cir. 1992) (denying *habeas corpus* relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present certain evidence). Beale simply does not state how testing of the blood on the floor would have bolstered his defense, and the evidence presented at trial shows that such testing would not have done so. Indeed, if forensic analysis had definitively shown the presence of any officers' blood, even mixed with his own, the testing would have damaged Beale's defense.

Second, reasonable jurists could conclude that counsel's investigatory decisions as to her defense strategy met the *Strickland* standard. The petitioner was charged with the *attempted murder of **three** police officers*. Officers Hall and Fite tased Beale in the bathroom, and all three officers testified that that Beale drew his weapon and was shooting *at all of them* in an attempt to kill them. The presence of the blood is largely superfluous – no matter whose blood it was. The relevant proof is the testimony that Beale opened fire *at* the officers in order to kill them. Given the evidence presented, even if none of the officers suffered injury from the attack, considering the situation and the officers' proximity to each other, a jury could easily have found him guilty of attempted murder as to all three officers.

For these reasons, Beale has not shown that he suffered prejudice from counsel's decision not to raise the issue of the lack of forensic blood testing. Indeed, trial counsel's strategy secured an *acquittal* on Beale's attempted murder charge regarding Officer Vuncannon – who was positioned behind Officers Hall and Fite – and who was *actually injured* when Beale fired at the three officers. *See* Doc. 14-4 at 74 (SCR, Vol. 4 at 223) (Officer Hall testifying that he saw blood on the floor and feared that he had been hit); Doc. 14-4 at 126 (SCR, Vol. 4 at 275)

(Officer Fite testifying that Beale aimed his weapon at fired "[d]irectly at [her]self and Officer Hall"); *see also* Doc. 14-5 at 15 (SCR, Vol. 5 at 314 (Officer Vuncannon testifying that the "[d]etective seemed to think that [he] had been grazed by one of the bullets that came by"); Doc. 14-7 at 20–22 (SCR, Exhibits, S-10) (photographs of Officer Vuncannon's injuries).

Thus, counsel's trial strategy regarding the blood evidence was sufficient to convince the jury to acquit Beale as to one count of attempted murder.   Hence, Beale has not met the *Strickland* standard regarding trial counsel's strategic choice on this issue.   *Pape*, 645 F.3d at 291; *Yohey*, 985 F.2d at 228; *see also Dunn*, 594 U.S. at 739 ("strategic decisions … are entitled to a strong presumption of reasonableness").

Under AEDPA standards, the Mississippi Supreme Court reasonably rejected Beale's ineffective-assistance claim, and he has not overcome the deference afforded to the rejection of that claim in Ground Four.   *Richter*, 562 U.S. at 105; *Dunn*, 594 U.S. at 739 (noting that federal court's must be "doubly deferential" to the state Supreme Court's decisions regarding ineffective assistance of counsel; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (same).   As such, Beale's request for *habeas corpus* relief as to Ground Four will be denied.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. Ground Two will be dismissed with prejudice as procedurally barred.   In addition, Grounds One, Three, and Four will be denied, as the Mississippi Supreme Court decided the issues on the merits, and the petitioner has not met the AEDPA standard to overcome that decision.   A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 25th day of November, 2025.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI